JEFFREY G. KNOWLES (SBN 129754)
ef-jgk@cpdb.com
CHRISTOPHER J. WIENER (SBN 280476)
ef-cjw@cpdb.com
COBLENTZ PATCH DUFFY & BASS LLP
One Montgomery Street, Suite 3000
San Francisco, California 94104-5500
Telephone: 415.391.4800
Facsimile: 415.989.1663

Attorneys for Plaintiff
SOUNDEXCHANGE, INC.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SOUNDEXCHANGE, INC., a Delaware corporation.<br><br>Plaintiff,<br><br>v.<br><br>LIVEONE, INC., a Delaware corporation & SLACKER, INC., a Delaware corporation.<br><br>Defendants. | Case No.<br><br>**COMPLAINT FOR UNDERPAYMENT OF STATUTORY COPYRIGHT ROYALTIES AND FOR BREACH OF CONTRACT**<br><br>**JURY TRIAL DEMANDED**<br><br>**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL** |

Plaintiff SoundExchange, Inc. ("Plaintiff" or "SoundExchange") hereby brings this Complaint for breach of contract and for the underpayment of statutory copyright royalties against Defendants LiveOne, Inc. (f/k/a LiveXLive Media Inc.) ("LiveXLive") and Slacker, Inc. ("Slacker," and together with LiveXLive, "Defendants").[1] Plaintiff, on personal knowledge as to its own acts, and upon information and belief as to all others based on investigation, alleges as follows:

---

[1] LiveXLive Media Inc. announced a rebranding to LiveOne, Inc. on September 15, 2021.

1
**COMPLAINT**

## PRELIMINARY STATEMENT

1. Slacker, founded in 2006, delivers free and subscription-based access to millions of sound recordings and hundreds of expert-programmed stations via numerous platforms, including the web, mobile devices, in-car infotainment systems and consumer electronics. As such, Slacker is a user of the Copyright Act's "statutory license" to make digital transmissions of sound recordings. LiveXLive acquired Slacker in 2018.

2. SoundExchange is the sole entity designated by regulation in the United States to collect statutory license payments from copyright users and to distribute those payments to performing artists and copyright owners. Thus, it is SoundExchange to which Slacker is obligated to make payments under the statutory license.

3. Until July 2017, Defendants provided SoundExchange with the statutorily required royalty reports – known as Statements of Account and Reports of Use – and paid some (though not all) of the periodic royalty payments owed to SoundExchange. Beginning in July 2017, Defendants continued to provide royalty reports, but failed to make the required payments described in those reports. Moreover, a December 2016 audit initiated by SoundExchange for the years 2013-2015 concluded that Defendants owed additional royalties to SoundExchange which Defendants also failed to pay. In addition, Defendants owed late fees set by regulation.

4. In October 2020, SoundExchange and Defendants entered into a Royalty Payment Plan Agreement (the "RPPA"), to provide a twenty-four month period during which Defendants would pay their overdue royalties and late fees, as described above. The RPPA covered overdue royalties through the August 2020 period, with the exception of statutory underpayments that could be uncovered in any pending or future audit. Defendants agreed that, in the event of a default, SoundExchange would be entitled to file a stipulated consent judgment.

5.  Defendants' compliance with the RPPA was short-lived. Beginning in August 2021, Defendants failed to make the required monthly payments under the RPPA.

6.  Defendants also failed to make certain required statutory license payments that came due after the RPPA was executed, and certain payments they did make were late. Indeed, for the period beginning September 2020 (*i.e.*, after the RPPA), Defendants only kept current with their monthly royalty payments through April 2021. They have failed entirely to pay royalties from May 2021 through the present. Further, a rate change which took effect in 2021 and was retroactive to January 1, 2021, required Defendants to pay additional amounts above those already paid through April 2021. Defendants also failed to make those additional royalty payments.

7.  SoundExchange initiated an additional audit in December 2019 for the years 2016-2018. The final report, dated June 2, 2021, found that Defendants owed additional royalties and late fees not otherwise included in the RPPA.

8.  On March 14, 2022, SoundExchange notified Defendants that they were in default of the RPPA and that, pursuant to its terms, all amounts owed under the RPPA were immediately due and payable.

9.  SoundExchange brings this action to recover the royalty amounts that Defendants have reported to SoundExchange but failed to pay since 2021, the additional royalty payments uncovered by the December 2019 audit, the underpaid royalties resulting from the rate increase in 2021, and all late fees set by regulation. SoundExchange also seeks to recover the amounts owed and payable under the RPPA, which Defendants have breached by their non-payment pursuant to its terms.

## JURISDICTION AND VENUE

10. This is a civil action seeking damages for breach of contract and under the Copyright Act, 17 U.S.C. § 101, *et seq*. This Court has original subject matter jurisdiction over Copyright Act claims pursuant to 28 U.S.C. §§ 1331 and 1338(a).

3
COMPLAINT

This Court has supplemental jurisdiction over SoundExchange's non-federal claims pursuant to 27 U.S.C. § 1367 because SoundExchange's breach of contract claims are formed from the same case and/or controversy and are related to SoundExchange's Copyright Act claims.

11. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2). A substantial part of the events giving rise to this suit have occurred in this District, Defendants' contacts with the Central District of California are sufficient to subject it to jurisdiction in this District, and Defendants irrevocably and unconditionally submitted to personal jurisdiction and venue in Los Angeles, California in the RPPA.

12. LiveXLive is a Delaware corporation, registered to do business in the State of California and headquartered in Beverly Hills, California, in this District. LiveXLive provides streaming internet radio services to subscribers throughout the country, including in the Central District of California, via its wholly owned subsidiary Slacker, a Delaware corporation registered to do business in California. Defendants send Statements of Account to SoundExchange from their Central District of California office; and Defendants' correspondence with SoundExchange in advance of this litigation was sent and received in the Central District of California.

**PARTIES**

13. Plaintiff SoundExchange is an independent nonprofit organization organized and existing under the law of the State of Delaware, with its headquarters at 733 10th Street NW, 10th Floor, Washington, DC 20001. SoundExchange is the sole entity in the United States designated by the Library of Congress to collect digital performance royalties from statutory license users and to distribute those royalties to performing artists and copyright owners. Specifically, SoundExchange is charged by statute and regulation with administering the statutory license, *see, e.g.*, 17 U.S.C. § 114(g)(3)(A); 37 C.F.R. § 370.4, collecting and distributing

statutory royalties, *see, e.g.*, 17 U.S.C. § 114(g)(2), (3); 37 C.F.R. § 380.7, and enforcing the terms of the statutory license, *see, e.g.*, 17 U.S.C. § 114(g)(3)(C). Pursuant to this authority, SoundExchange collects statutory royalties from television music channels, satellite radio, Internet webcasters, and other types of services for transmission of sound recordings, and distributes those royalties to performing artists and copyright owners.

14. Defendant LiveXLive is a corporation organized and existing under the law of the State of Delaware, with its principal place of business located at 269 South Beverly Drive, Suite 1450, Beverly Hills, California 90212.

15. Defendant Slacker is a corporation organized and existing under the law of the State of Delaware, with its principal place of business located at 16935 W. Bernardo Drive, Suite 270, San Diego, California 92127.

16. On information and belief, Slacker is a wholly-owned subsidiary of LiveXLive.

17. Defendants operate a free and subscription-based commercial webcasting service that provides access to millions of songs and hundreds of expert-programmed stations via numerous platforms, including the web, mobile devices, in-car infotainment systems and consumer electronics.

## FACTUAL ALLEGATIONS

A. **The Statutory and Regulatory Framework**

18. Section 106 of the Copyright Act grants the owner of a copyright in a sound recording the exclusive rights "to reproduce the copyrighted work in copies or phonorecords" and "to perform the copyrighted work publicly by means of a digital audio transmission." 17 U.S.C. §§ 106(6), (7).

19. As an alternative to having every music service negotiate separate licenses with every copyright owner, Congress has granted various eligible entities the ability to obtain a "statutory license," 17 U.S.C. §§ 112(e), 114(d)(2), to render certain digital public performances of copyrighted sound recordings and make

related reproductions. This license allows eligible entities that comply with applicable requirements, including the payment of established royalties, to reproduce and publicly perform all commercial sound recordings without fear of copyright infringement. *E.g.*, 37 C.F.R. § 380.10.

20. "[R]easonable rates and terms of royalty payments" under the statutory license are set by the Copyright Royalty Judges in adversarial administrative proceedings that occur every five years. *Id*. §§ 112(e)(3), 114(f). The "rates and terms" set in proceedings before the Copyright Royalty Judges "distinguish among the different types of digital audio transmission services then in operation." *Id*. § 114(f).

21. In October 1998, Congress passed the Digital Millennium Copyright Act ("DMCA"), Pub. L. No. 105-304, 112 Stat. 2860 (Oct. 28, 1998), which amended section 114 and other provisions of the Copyright Act. Among other things, the DMCA put in place a royalty rate standard for the sound recording statutory license. Services are classified as either "eligible nonsubscription transmission" services or "new subscription service[s]," depending on whether they are provided to consumers on a subscription basis. *Id*. § 114(j)(6), (8).

22. Licensees must provide SoundExchange monthly royalty payments and Statements of Account for their use of copyrighted sound recordings. *E.g.*, 37 C.F.R. §§ 380.2(b) & 380.3(a).

23. To the extent Licensees are late delivering a royalty payment, they must pay a fee of "1.5% (or the highest lawful rate, whichever is lower) of the late payment amount per month." For a late Statement of Account, Licensees must pay "1.5% of the payment amount associated with the Statement of Account." 37 C.F.R. § 380.2(d).

24. Applicable regulations also grant SoundExchange the right to audit a licensee's records to verify the royalty payments. Those audits may be conducted annually and may cover any or all of the preceding three calendar years, however,

any given calendar year may only be audited once. 37 C.F.R. § 380.6(b) (2011 & 2016).[2] This audit is "binding on all parties." 37 C.F.R. § 380.6(c) (2011 & 2016). Additionally, if there is an underpayment of 10% or more, the licensee must bear the audit's reasonable costs. 37 C.F.R. § 380.6(g) (2011 & 2016).

**B.     Defendants' Non-Payments to SoundExchange**

25.     Until 2017, Defendants regularly provided the periodic Statements of Account, Reports of Use, and royalty payments required by the statutory license albeit sometimes untimely.

26.     That changed in 2017, when Defendants' payments slowed and finally stopped in July 2017. Defendants continued to provide (generally timely) Statements of Account and Reports of Use, identifying the amount of royalties Defendants owe to SoundExchange, but failed to make the necessary payments.

27.     Defendants ultimately owed millions of dollars in outstanding royalties and late fees.

**C.     Defendants' Failure To Pay Underpayments Revealed By Audit**

28.     In December 2016, SoundExchange initiated an audit of Defendants' payments for the 2013 through 2015 royalty reporting years pursuant to 37 C.F.R. Part 380. That audit concluded in September 2019.

29.     The audit revealed that Defendants had underpaid royalties owed to SoundExchange and had, correspondingly, failed to pay the statutory late fees.

30.     Despite receiving the audit results in 2019, Defendants did not pay the royalties or late fees identified by the audit.

**D.     The Royalty Payment Plan Agreement and Subsequent Royalties**

31.     On October 30, 2020, SoundExchange and Defendants entered into the Royalty Payment Plan Agreement, to provide a twenty-four month period during which Defendants would pay their overdue royalties and predetermined late fees

---

[2] Although 37 CFR § 380.6 has been subsequently amended, the regulations governing the audited years (here, 2013 – 2018) govern the audit itself.

based on the schedule of payment in the RPPA and the formula in the applicable regulations. Defendants agreed that, in the event of a default, SoundExchange would be entitled to file a stipulated consent judgment and to collect additional late fees to the maximum allowed by regulation.

32. Beginning in August 2021, Defendants failed to make the required monthly payments under the RPPA.

33. Defendants also failed to make certain required statutory license payments that came due after the RPPA was executed, and also made late payments.

34. In addition to royalties due in the normal course, Defendants have failed to make payments required by a 2019 audit. SoundExchange initiated an additional three-year statutory royalty audit in December 2019 for the years 2016-2018. The final report, dated June 2, 2021, found that Defendants owed additional royalties and late fees not otherwise included in the RPPA.

35. SoundExchange provided written notice of Licensee's failures to make timely installment payments, including on September 13, 2021, September 23, 2021, and October 7, 2021.

36. On March 14, 2022, SoundExchange notified Defendants that they were in default of the RPPA and that, pursuant to its terms, all amounts owed under the RPPA were immediately due and payable. Defendants have failed to cure their default and are in arrears in the amount of ▮▮▮▮▮▮▮▮ plus at least ▮▮▮▮▮▮▮▮ in additional late fees (as determined by regulation), which continue to accrue.

37. Subsequent to the RPPA, Defendants have failed to meet their ongoing obligations to pay all statutory royalties falling due after October 2020. These amounts total at least ▮▮▮▮▮▮▮▮, inclusive of amounts determined owing as a result of an audit as well as statutory late fees, which continue to accrue.

**COUNT ONE**

**(Violation of 37 C.F.R. § 380.2, 37 C.F.R. § 380.3, 37 C.F.R. § 380.10, and 17 U.S.C. § 114(f)(3)(B) – Underpayment of Statutory Royalties)**

38. SoundExchange incorporates by reference paragraphs 1 to 37 as if fully set forth herein.

39. The Copyright Act provides a statutory license for certain digital performances of sound recordings, as well as related reproductions to facilitate the licensee's performance of sound recordings. 17 U.S.C. §§ 112(e), 114.

40. Because Defendants have chosen to rely on that statutory license, they must make royalty payments to SoundExchange at the rates set by the Copyright Royalty Judges. 17 U.S.C. §§ 112(e)(6)(A), 114(f)(3)(B).

41. Starting with the license period beginning September 2020 – *i.e.*, after the RPPA – Defendants have made digital audio transmissions pursuant to the statutory license but failed to pay all the royalties they owe for those transmissions according to their own submitted Statements of Account. *See* 37 C.F.R. § 380.2(a), 37 C.F.R. § 380.3(a), 37 C.F.R. § 380.10.

42. Defendants' failure to make all required royalty payments contravenes the provisions of the Copyright Act specifying that the rates determined by the Copyright Royalty Judges are "binding on . . . entities performing sound recordings" during the period when the rates are in effect, 17 U.S.C. § 114(f)(1)(B), and that services relying on the statutory license must "pay[] royalty fees in accordance with" § 114(f), *id*. § 114(f)(3)(B). Defendants' non-payments also contravene the requirement that a "Licensee must make the royalty payments due under" the regulations to SoundExchange. 37 C.F.R. § 380.2(a).

43. The cumulative amount of Defendants' underpayment – which harms SoundExchange, as well as the performing artists and copyright owners on whose behalf it collects and distributes royalties – continues to grow with each passing month, along with the associated late fees under 37 C.F.R. § 380.2(d), and amounts

to at least ▇▇▇▇▇. This amount does not include royalties due and payable under the RPPA, which is the subject of Count Three.

## COUNT TWO

**(Violation of 37 C.F.R. § 380.6 – Non-Payment Of Statutory Royalties Uncovered By Audit)**

44. SoundExchange incorporates by reference paragraphs 1 to 43 as if fully set forth herein.

45. Pursuant to statute, SoundExchange initiated an additional audit in December 2019 for the years 2016-2018.

46. The final report, dated June 2, 2021, found that Defendants owed additional royalties and late fees not otherwise included in the RPPA. These royalties were not extinguished by the RPPA, which specifically reserved SoundExchange's audit rights and any resulting claims.

47. Defendants have not paid the amounts owed pursuant to the June 2, 2021 audit. Accordingly, Defendants have violated 37 C.F.R. § 380.6 by failing to make all royalty payments owed under 37 C.F.R. § 380.2, 37 C.F.R. § 380.3, 37 C.F.R. § 380.10, and 17 U.S.C. § 114(f)(3)(B).

48. Defendants owe ▇▇▇▇▇ in unpaid royalties and late fees, which continue to accrue at the statutory rate.

## COUNT THREE

**(Breach of Contract – Royalty Payment Plan Agreement)**

49. SoundExchange incorporates by reference paragraphs 1 to 48 as if fully set forth herein.

50. The RPPA obligated Defendants to make twenty-four monthly installment payments beginning in November 2020.

51. In the event Defendants failed to make such payments, SoundExchange is entitled to provide notice of Defendants' failure to perform and, if Defendants failed to resolve their nonpayment within ten business days of the notice, to declare

a default. In the event of a default, (i) SoundExchange is entitled to collect late fees to the maximum allowed by regulation; (ii) the balance of all remaining payments are made immediately due and payable in full; and (iii) SoundExchange is entitled to enter a stipulated judgment agreed to by the parties.

52. SoundExchange has satisfied all conditions necessary to declare a default, including by providing written notice of Licensee's failures to make timely installment payments, on September 13, 2021, September 23, 2021, and October 7, 2021. On March 14, 2021, SoundExchange provided notice by email and overnight delivery that Defendants were in default.

53. Defendants have not cured their default. Accordingly, Defendants have breached the RPPA.

54. Defendants owe at least ███████, made immediate and payable by their default, for their breach of the RPPA, inclusive of late fees which continue to accrue.

## DEMAND FOR JURY TRIAL

SoundExchange hereby demands a jury trial on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, SoundExchange respectfully prays for judgment against Defendants as follows:

a. For compensatory damages corresponding to Defendants' underpayment of statutory license fees and associated late fees and the cost of the audit, in such amounts to be determined at trial;

b. For compensatory damages for Defendants' breach of the Royalty Payment Plan Agreement and associated late fees, in such amounts to be determined at trial;

c. For pre-judgment and post-judgment interest;

d. For SoundExchange's costs, including reasonable attorneys' fees and costs pursuant to 17 U.S.C. § 505; and

e. For any other relief the Court deems just and proper.

DATED: June 28, 2022          COBLENTZ PATCH DUFFY & BASS LLP


By:    */s/ Christopher J. Wiener*
CHRISTOPHER J. WIENER
Attorneys for Plaintiff
SOUNDEXCHANGE, INC.

4833-2440-4159.10