KESHER LAW GROUP, P.C.
  Jeffrey A. Katz (STATE BAR NO. 137246)
Jeffrey.katz@kesherlawgroup.com
1919 N. Heliotrope Dr.
Santa Ana, CA  92706
Telephone: (714) 296-8309

Attorneys for Defendants
LIVEONE, INC., and SLACKER, INC.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SOUNDEXCHANGE, INC., a Delaware corporation. | CASE NO.  2:22-CV-04410-AB-AFM |
| Plaintiff, | **DEFENDANTS' *EX PARTE* APPLICATION TO EITHER (1) SET ASIDE THE DEFAULT AND VACATE DEFAULT JUDGMENT; OR, (2) SHORTEN TIME TO HEAR DEFENDANTS' MOTION TO SET ASIDE DEFAULT AND VACATE DEFAULT JUDGMENT AND STAY THE CONSENT ORDER; AND TO CONVENE A STATUS AND MANDATORY SETTLEMENT CONFERENCE** |
| v. | |
| LIVEONE, INC., a Delaware corporation & SLACKER, INC., a Delaware corporation. | |
| Defendants. | |
| | Hon. Andre Birotte Jr. |
| | Date: None |
| | Set Time: None |
| | Set Crtrm.: 7B (350 West First Street, Los Angeles, CA  90012) |
| | Discovery Cut-off: None |
| | Set Pretrial Conference Date: None |
| | Set Trial Date: None Set |
| | ***Plaintiff intends to oppose this application.*** |

DEFENDANTS' *EX PARTE* APPLICATION TO EITHER (1) SET ASIDE THE DEFAULT AND VACATE
DEFAULT JUDGMENT; OR, (2) SHORTEN TIME

Pursuant to the Federal Rules of Civil Procedure and Local Rule 7-19, Defendants LiveOne, Inc. and Slacker, Inc. (collectively "LiveOne") respectfully submit this *ex parte* application to set aside the default and vacate the default judgment or, in the alternative, to (1) shorten time to convene a hearing on which LiveOne's motion to set aside the default and vacate the default judgment may be heard; and (2) stay the consent order, entered on October 13, 2022, until after the hearing on LiveOne's motion.  In addition, LiveOne requests this Court to convene status and mandatory settlement conferences.

This *ex parte* application is made on the grounds Plaintiff, through its counsel represented, on three separate occasions, that it would cooperate with Defendants in setting aside the entry of default by allowing Defendants more time and opportunity to submit an answer to Plaintiff's complaint.  Despite these representations, Plaintiff expeditiously moved to enter the judgment when Defendants counteroffer was not a complete acceptance of Plaintiff "last and final" demand.

To the extent the entry of judgment is premised on the Stipulation to Entry of Consent Judgment, the entry of judgment is permitted, under the terms of the Stipulation, should "Defendants default upon the terms of the Royalty Payment Plan Agreement."  Plaintiff has not submitted evidence of the terms and conditions of the underlying agreement and the nature of LiveOne's default.

LiveOne makes these requests through an *ex parte* application because Plaintiff's surreptitious request for entry of judgment has triggered LiveOne's default on two substantial senior secured notes which are secured by all of LiveOne's and their subsidiaries assets.  If LiveOne does not promptly discharge SoundExchange's default judgment, the secured creditors will accelerate the loans and call for immediate repayment of principal and unpaid interest.  This economic damage this will cause LiveOne will be unsustainable for this small company.

Within 24 hours of Plaintiff's filing its Complaint and nine days before it served LiveOne

with the Complaint, LiveOne had reached out to Plaintiff's counsel to resolve the matter.  Between June 29, 2022, through the eve of Plaintiff's requesting entry of the judgment, the parties were in ongoing and fruitful negotiations.  Plaintiff's counsel wrote, "The negotiations have proven to be complicated with numerous emails, calls and discussions."  (Katz Decl., at ¶ 15 and Exhibit C.)  At the final stage of negotiations, the parties had an agreement as to the amount; however, LiveOne sought a payment schedule that pushed back the initial payment tranche by one month, was six months longer than and otherwise substantially similar to Plaintiff's "last and final." Accordingly, LiveOne's counteroffer acceded to Plaintiff's settlement amount, but not the payment schedule. LiveOne's request for a revised payment schedule was not a capricious ask, but was requested in order to comply with its senior lender covenants.  LiveOne moves this Court to set aside the judgment and direct the parties into a mandatory settlement conference so that a fair payment schedule can be finalized.

Pursuant to Local Rule 7-19, on October 17, 2022, Jeffrey Katz, counsel for LiveOne, contacted Christopher Wiener of Coblentz, Patch, Duffy & Bass, LLP (address: One Montgomery Street, Suite 3000, San Francisco, CA 94104; telephone: (415) 391-4800), counsel of record for Plaintiff SoundExchange, Inc., regarding the substance of this *ex parte* application. SoundExchange's counsel stated that it would oppose this application.


DATED: October 18, 2022               KESHER LAW GROUP, P.C.
                                      Jeffrey A. Katz


                                      /Jeffrey A. Katz/
                                      _____
                                      Attorneys for Defendants
                                      LIVEONE, INC., and SLACKER, INC.

# TABLE OF CONTENTS

**Page**

I.    **Introduction**    **4**

II.    **Factual and Procedural Background**    **5**

III.    **Legal Argument**    **10**

A.  **The Legal Standard to Set Aside Entry of Default Judgment And Vacate Judgment**    **10**

B.  **LiveOne's Motion is Timely**    **12**

C.  **Declaration Showing Good Cause for *Ex Parte* Relief and Clean Hands**    **12**

D.  **Plaintiff Failed to Provide the Rule 55(b)(2) Advance Notice before Seeking Entry of the Judgment**    **14**

E.  **Good Cause Exists to Set Aside Entry of Default and Default Judgment**    **15**

      1.  **Defense:  Statute of Limitations**    **16**

      2.  **Defense:  Economic Duress**    **16**

F.  **Plaintiff Will Not Be Prejudiced by an Order Setting Aside the Default**    **19**

G.  **Entry of Judgment on the RPPA Is in Error**    **19**

      1.  **The Entry of Judgment Violates FRCP Rule 54**    **19**

      2.  **Plaintiff's Request for Entry of Judgment Is Inadequate**    **20**

      3.  **The Judgment Includes Statutory Fees Assessed after the Stipulated Judgment Was Executed**    **20**

IV.    **Conclusion**    **21**

DEFENDANTS' *EX PARTE* APPLICATION TO EITHER (1) SET ASIDE THE DEFAULT AND VACATE DEFAULT JUDGMENT; OR, (2) SHORTEN TIME

# <u>TABLE OF AUTHORITIES</u>

17 USC 507(b) ................................................................................................................- 16 -

Bricklayers & Allied Craftworkers Local 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Const., LLC (2nd Cir. 2015) 779 F.3d 182 ....................................................................- 11 -

City of New York v. Mickalis Pawn Shop, LLC (2nd Cir. 2011) 645 F3d 114 .........................- 14 -

Eitel v. McCool (9th Cir. 1986) 782 F.2d 1470 ...........................................................................- 5 -

F.R.C.P. Rule 54.............................................................................................................- 19 -

**F.R.C.P. Rule 55(b)(2)**.............................................................................- 14 -, - 21 -

F.R.C.P. Rule 60(b)(1) ...............................................................................- 10 -, - 11 -

F.R.C.P. Rules 55(c)....................................................................................- 10 -, - 11 -

FRCP 60(c)(1) ..................................................................................................- 12 -

In re Chinese-Manufactured Drywall Products Liability Litig. (5th Cir. 2014) 742 F3d 576 ....- 11 -

Indigo America, Inc. v. Big Impressions, LLC (1st Cir. 2010) 597 F.3d 1 ................................- 11 -

Meadows v. Dominican Republic (9th Cir. 1987) 817 F.2d 517 .........................................- 12 -

Mission Power Engineering Co. v. Continental Cas. Co. (CD CA 1995) 883 F.Supp. 488 .......- 12 -

NewGen, LLC v. Safe Cig, LLC (9th Cir. 2016) 840 F.3d 606...................................................- 11 -

*Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663.............................................................- 16 -

*Rich & Whillock, Inc. v. Ashton Development, Inc.* (1984) 157 Cal.App.3d 1154 ...................- 18 -

Sea-Land Service, Inc. v. Ceramica Europa II, Inc. (1st Cir. 1998) 160 F.3d 849 ...................- 14 -

TCI Group Life Ins. Plan v. Knoebber (9th Cir. 2001) 244 F.3d 691 ..................- 11 -, - 15 -, - 19 -

*United States v. Signed Personal Check No. 730 of Mesle* (9th Cir. 2010) 615 F.3d 1085 ........- 15 -

**DEFENDANTS' *EX PARTE* APPLICATION TO EITHER (1) SET ASIDE THE DEFAULT AND VACATE DEFAULT JUDGMENT; OR, (2) SHORTEN TIME**

**MEMORDANUM OF POINTS & AUTHORITIES**

## I.    Introduction

Within 24 hours of Plaintiff's filing its Complaint, and nine days before LiveOne was served, LiveOne's outside counsel reached out to Plaintiff's counsel requesting an immediate phone call to discuss a "mutually acceptable payment plan."  That gesture began a negotiation which Plaintiff counsel has described as "complicated with numerous emails, calls and discussions."  Much of the back-and-forth is included as Exhibit A to the Declaration of Jeffrey Katz, filed concurrently with this *Ex Parte* Application.

LiveOne remained focused on achieving a negotiated settlement. While it did not file an answer, it had no intention to take advantage of the opposing party, interfere with judicial decision-making, or otherwise manipulate the legal process.  LiveOne was conscientious about its obligation to file an answer.  It initially secured a 30-day extension with the Plaintiff.  It requested a second extension while offers and demands were being exchanged between the two sides. However, this Court issued an OSC to Plaintiff for failure to prosecute.  Plaintiff was compelled by this OSC to request entry of default.  However, Plaintiff's counsel made it clear to LiveOne's outside corporate counsel and, thereafter, to its retained litigation counsel, that it will cooperate with counsel's efforts to address the default.

This Court's minute order, dated September 13, 2022, recommended that the parties address the default by stipulation. Twice, Plaintiff's counsel said he would execute the stipulation to set aside the default.  However, Plaintiff suspended the consent pending its review of LiveOne's counteroffer.  The counteroffer acceded to Plaintiff's settlement amount, but not some of the payment schedule.

Within hours of receiving LiveOne's counteroffer, Plaintiff's counsel requested this Court to enter judgment against LiveOne.  In the supporting declaration for the request, attorney Christopher Wiener declared:  "As of this date, Defendants have failed to timely serve an answer or otherwise respond to the Complaint by the extended deadline."  (Declaration of Christopher Wiener, dated October 12, 2022, at  ¶ 7.)  The entry of this judgment came as a surprise to LiveOne and its counsel as it was contrary to prior representations.   These events warrant this Court's setting aside the default and vacating the judgment.

To the extent that Plaintiff argues that it did not request a default judgment – but rather the entry of a stipulated judgment – the supporting declaration of Mr. Wiener fails to establish that the conditions of the stipulation have been met permitting Plaintiff to request the court to enter the Consent Judgment.  That is, absent from Mr. Wiener's declaration is a statement that LiveOne did not fulfill the terms and conditions of the underlying agreement.

Ruling on this application, LiveOne asks this Court to consider "the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits." *Eitel v. McCool* (9th Cir. 1986) 782 F.2d 1470, 1471-1472.

## II.    Factual and Procedural Background

Plaintiff SoundExchange, Inc., filed its Complaint against LiveOne and Slacker (collectively "LiveOne") on June 28, 2022.  (Declaration of Jeffrey Katz, dated, October 17, 2022, ("Katz Decl."), at ¶ 3.)

On June 29, 2022, before Plaintiff effectuated service on LiveOne, Sasha Ablovatskiy – LiveOne's outside corporate counsel -- emailed Plaintiff's counsel, Jeffrey Knowles and Christopher Weiner, inquiring if the two attorneys were available on that same day to speak with

**DEFENDANTS' *EX PARTE* APPLICATION TO EITHER (1) SET ASIDE THE DEFAULT AND VACATE DEFAULT JUDGMENT; OR, (2) SHORTEN TIME**

LiveOne's CEO, Robert Ellin, and its Interim CFO, Aaron Sullivan to discuss resolving the dispute set forth the Complaint.  Mr. Ablovatskiy wrote:

> "I saw that you filed a complaint yesterday against LiveOne and Slacker for outstanding royalty payments. On behalf of the Company, I apologize that this happened as the Company was under the impression that it was negotiating with SX on a payment plan.  As you may know Mike Bebel is no longer with the Company and there were other personnel changes, and we all thought that this was being dealt with after Mike's departure.  Again our apologies as the Company certainly did not intend to ignore SX and is hoping to workout a mutually acceptable payment plan.

> "Are you available today to speak with Rob and Aaron to discuss this further?"  (Katz Decl., at Exhibit A, p. 30.)

Mr. Ablovatskiy's email began a steady series of emails and phone calls in which the parties attempted to negotiate a resolution to this matter.  Exhibit "A" to the Katz Declaration contains many of the email exchanges between Mr. Wiener, and LiveOne's executives and outside corporate counsel, between June 29, 2022, and October 12, 2022.  The exhibit also reflects that, in addition, to the exchange of substantive emails, the parties had a number of conference calls to discuss resolution. Plaintiff, thought its counsel, also indicated on several calls that LiveOne appears to be negotiating in good faith and, therefore, Plaintiff would be amenable to permitting an extension of time for LiveOne to answer Plaintiff's Complaint.  (Id.)

Plaintiff served LiveOne with the Complaint on July 7, 2022 – nine days after Mr. Ablovatskiy initiated settlement discussions with Mr. Wiener.  (Id., at ¶ 6.)  LiveOne's response was due on July 28, 2022; however, the parties stipulated to a 30-day extension. (Id., at ¶ 7.)

In the midst of the flurry of settlement discussions and included with one of LiveOne's settlement offers, Mr. Ablovatskiy asked Mr. Wiener, on August 23, 2022, for an additional 3-week extension to file LiveOne's Answer. (Katz Decl., at Exhibit A., p. 16.)

Three days Mr. Wiener responded:  "Regarding an extension for the time to answer, Live One and Slacker's answer was due on August 18, and we have been ordered by the Court to move for a default or have our case dismissed for lack of prosecution.  At this point, it is not clear whether

- 6 -

we could even stipulate to an extension since the time to answer has passed.  Accordingly, we intend to take Live One and Slacker's default on September 6 if an answer has not been filed by September 5.  While we will not oppose a motion by Live One and Slacker for permission to file a belated answer, we cannot stipulate to that relief."  (Id.)

Mr. Ablovatskiy is neither a litigation attorney nor licensed to practice law in California.  He looked for counsel to prepare a motion for LiveOne requesting permission to file a belated answer. (Id., at ¶ 10.)   On September 6, 2022, Mr. Ablovatskiy emailed attorney Jeffrey Katz requesting that I prepare the motion for permission to file a belated answer.  (Id., at 11.)

Mr. Katz drafted a Motion for Extension of Time to File a Responsive Pleading Pursuant to Rule 6(b).  (Katz Decl., at Exhibit B, p. 2.).  On September 8, 2022, Mr. Katz telephoned Mr. Wiener to discuss the matter.  With no return call, Mr. Katz emailed Mr. Wiener and Mr. Knowles a couple of hours later and attached the draft Motion.   (Katz Decl., ¶¶ 12-13 and Exhibit B.)

Mr. Wiener telephoned Mr. Katz after his receipt of the email.  The attorneys discussed the matter and the extensive amount of negotiations that had transpired to this point.  Mr. Katz asked Mr. Wiener to review the draft Motion and advise if he had any issues. (Id., at ¶ 14.)

Mr. Wiener emailed Mr. Katz later that day writing "[W]e're ok with the motion" with the proviso that one paragraph be modified.  He asked that one sentence be modified to remove certain substance from the pleading and to be replaced with: "The negotiations have proven to be complicated with numerous emails, calls and discussions."  (Katz Decl., at ¶ 15 and Exhibit C.)

Mr. Katz promptly filed and served the motion and proposed order on September 8, 2022. (Id., at ¶ 16 and Exhibit D.)  On September 9, 2022, Mr. Katz received an email from Mr. Wiener attaching the Court's rejection of the Motion to Extension of Time because default had already been entered.  (Id., at ¶ 17 and Exhibit E.).

**DEFENDANTS' *EX PARTE* APPLICATION TO EITHER (1) SET ASIDE THE DEFAULT AND VACATE DEFAULT JUDGMENT; OR, (2) SHORTEN TIME**

Mr. Katz immediately reviewed the Court's docket and learned for the first time that SoundExchange had requested entry of default. He emailed Mr. Wiener asking him to shed some light on, what appeared to Mr. Katz, his inconsistent acts: (1) requesting entry of default; and (2) his approving the content of and not opposing LiveOne's Motion for Extension of Time. (Id., at ¶ 18.)

Mr. Wiener replied explaining: "On August 23, we were ordered to show cause why our case should not be dismissed for lack of prosecution if we failed to request a request a default by September 6 (in light of LO and Slacker's missed deadline to respond). I have attached the email chain with Sasha where we let him know we would have to seek entry of default. With no answer filed by the court-ordered deadline, we sought the clerk's entry of default on September 6, which was entered by the clerk yesterday afternoon." (Id., at ¶ 19 and Exhibit E.)

Mr. Katz forwarded the Court's rejection to Mr. Ablovatskiy who subsequently telephoned Mr. Wiener. Plaintiff's counsel explained to Mr. Ablovatskiy that Plaintiff's counsel were forced by the court to file for default by September 6 or withdraw, which they did not want to do (withdraw). Mr. Ablovatskiy wrote to Mr. Katz following his phone call with Mr. Wiener and explained: "So the clerk entered a clerk default, which Chris believes we can file to set aside. He has no idea how to do that in the district court, but hopefully you do. SX will not oppose it. And he wasn't sure if it's up to the judge to set it aside or their mere agreement would be sufficient." (Id., at ¶ 20 and Exhibit F.)

Before Mr. Katz could complete and file a motion to set aside the default, this Court issued a minute order, on September 13, 2022, which provided: "Defendant filed this motion [Motion to Extend Time to File Answer] after being placed into default, which preclude the instant motion. To the extent the parties agree to allow Defendant additional time to respond to the complaint, as

- 8 -

indicated in the motion, the parties should jointly file a motion or stipulate to set aside entry of default." (Id., at ¶ 21 and Exhibit G, at pp. 2-3.)

On September 15, 2022, Mr. Wiener wrote to Mr. Ablovatskiy and Mr. Katz:  "[S]ee the below notice from the Court.  We are amenable to entering a stipulation setting aside the default and giving LiveOne/Slacker 14 days to answer from the date of entry of the stip.  Please prepare a draft and we'll take a look."  (Id., at ¶ 22 and Exhibit G., at p. 2.)

On September 15, 2022, Mr. Katz prepared the Stipulation to Set Aside Default and sent it to Mr. Wiener for his review, as he requested.  (Id., at ¶ 23 and Exhibit G, pp. 1, 4-5.)  Mr. Katz did not hear from Mr. Wiener for three days.  On September 18, 2022, he emailed Mr. Wiener, once again, asking him for his response to the draft Stipulation to Set Aside the Default.  (Id.)

On September 19, 2022, Mr. Wiener replied:  "Jeff, this is fine – you can file with my e-signature.  Thanks for preparing. (Id., at ¶ 25.)

On September 20, 2022, Mr. Wiener wrote to Mr. Katz:  "Jeff, please hold off on filing this. I need to discuss this further with my client." (Id., at ¶ 26 and Exhibit H., pp. 1-2.)  Mr. Ablovatskiy followed up the next day with Mr. Wiener.  Mr. Wiener replied:  "Sasha, we won't be in a position to evaluate until we see [LiveOne]'s counteroffer." (Id., at ¶¶ 27-28.)

Mr. Ablovatskiy replied:  "Understood Chris.  Aaron is sending the counter right now. Hopefully we can reasonably proceed from here, but I get it." (Id.)  Aaron [Sullivan, LiveOne's Interim CFO] did send out the counteroffer that very same day.  (Id., at ¶ 30 and Exhibit A, p. 10.)

Three days later, the parties convened a conference call to further discuss resolution.  On October 3, 2022, Mr. Wiener sent a settlement proposal to LiveOne which he identified as SoundExchange's "last, best, and final."  (Id., at ¶¶ 31-32 and Exhibit A, at p. 7.)  On October 11, 2022, LiveOne countered Plaintiff's proposal.  (Id., at ¶ 33 and Exhibit A, at p. 2.)  On October 11,

- 9 -

2022, at 4:46 p.m., Mr. Wiener wrote to Mr. Ablovatskiy, "Thanks Sasha.  Received. [SoundExchange] is considering it."  (Id., at ¶ 34.)

At 6:23 p.m., on October 12, 2022, Mr. Wiener advised Mr. Ablovatskiy that LiveOne's counteroffer was rejected and that SoundExchange would file the Stipulation and Consent Judgment "shortly."  Mr. Ablovatskiy promptly replied:  "Before you file, can we hop on a quick call to discuss? Seems like SX is rushing to file for some reason and we wanted to understand what it would take for us to get a deal done"  Mr. Wiener tersely replied:  "Sasha, our position is final" (Id., at ¶¶ 35-36.)

Without providing the specific details of the settlement offers, the difference between Plaintiff's October 3 "last, best and final" and LiveOne's October 11, 2022 counter is simply the timing of payments. The amount of money to be exchanged in each party's proposal is identical. LiveOne's counter sought an additional six months to make the settlement payment.  (Id., at ¶ 37.)

Within hours on that same evening of October 12, 2022, Mr. Wiener filed Plaintiff's request entry of judgment.  (See Docket No. 27.)  This Court entered judgment pursuant to Mr. Wiener's request on October 13, 2022.  (Id., at Docket No. 28.)

Mr. Wiener served Mr. Ablovatskiy and Mr. Katz with the Court's executed order on Friday, October 14, 2022.  (Katz Decl., at ¶ 40.)

## III.    Legal Argument

### A.  The Legal Standard to Set Aside Entry of Default and Vacate Judgment

The trial court has the power either to set aside the *entry of default* "for good cause" or set aside a final default *judgment* for various reasons, including "mistake, inadvertence, surprise, or excusable neglect" F.R.C.P. Rules 55(c) & 60(b)(1).

In determining whether "good cause" exists, the most important factors usually are:

- whether the default was willful;

- whether setting the default aside would prejudice the adversary; and

- whether a meritorious defense is presented. [*Bricklayers & Allied Craftworkers Local 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Const., LLC* (2nd Cir. 2015) 779 F.3d 182, 186; *In re Chinese-Manufactured Drywall Products Liability Litig.* (5th Cir. 2014) 742 F.3d 576, 594 (same "good cause" factors, but also holding identical "good cause" standard applies to both Rule 55(c) and Rule 60(b) relief.]

Other factors, however, may also be relevant, including:

- the nature of defendant's explanation for the default;

- the good faith of the parties;

- the amount of money involved; and

- the promptness of defendant's motion to set aside the entry of default. [*Indigo America, Inc. v. Big Impressions, LLC* (1st Cir. 2010) 597 F.3d 1, 3.]

Here, in the Ninth Circuit, the same standard is applied to vacate a judgment entered following entry of default. "A showing of lack of culpability sufficient to meet the Rule 55(c) 'good cause' standard [for setting aside entry of default] is ordinarily sufficient to demonstrate the 'excusable neglect' as well or 'mistake' criteria under Rule 60(b)(1) [to set aside a default judgment]." [*TCI Group Life Ins. Plan v. Knoebber* (9th Cir. 2001) 244 F.3d 691, 696 (overruled on other grounds as recognized by *NewGen, LLC v. Safe Cig, LLC* (9th Cir. 2016) 840 F.3d 606, 616); see also *Franchise Holding II, LLC v. Huntington Restaurants Group, Inc.* (9th Cir. 2004) 375 F.3d 922, 926; *In re Chinese-Manufactured Drywall Products Liability Litig.*, supra, 742 F.3d at 594—"Rules 55(c) and 60(b) allow a district court to set aside an entry of default or default judgment for 'good cause.'"

**B.  LiveOne's Motion is Timely**

A motion to vacate a default judgment  must be made within a reasonable time and *not more than 1 year* after the judgment was entered. [FRCP 60(c)(1); see *Brandon v. Chicago Bd. of Ed.* (7th Cir. 1998) 143 F3d 293, 296 —"one year time limit is jurisdictional and may not be extended in any event."]

A motion for relief is not necessarily timely because filed within 1 year after entry of the judgment. It must also have been brought diligently and within a reasonable time. [FRCP 60(c)(1); *Meadows v. Dominican Republic* (9th Cir. 1987) 817 F.2d 517, 520-521.

This Court entered default on September 6, 2022.  However, it did not appear that a motion to set aside the default was necessary.  Plaintiff's counsel twice represented that he would sign a stipulation permitting the default to be withdrawn and allowing Defendants the opportunity to answer.  Yet, he suspended his representation subject to SoundExchange's review of LiveOne's counteroffer, which was tendered on October 11, 2022.  (See Katz Decl., at ¶¶ 22, 25, 26, 28.)  It was only late on October 12, 2022, that LiveOne's counsel could infer that SoundExchange would not stipulate to setting aside the default.  (Id., at ¶ 35.)  Within hours of Mr. Wiener's sending this email, he filed for entry of judgment – but he did not serve counsel with the request for entry of judgment.  LiveOne's counsel learned of the entry judgment on October 14, 2022, when he was served with the executed judgment.  (Katz Decl., at ¶¶ 38-40.)

**C.  Declaration Showing Good Cause for *Ex Parte* Relief and Clean Hands**

The *ex parte* application must show why the moving party should be allowed to "go to the head of the line in front of all other litigants and receive special treatment." [*Mission Power Engineering Co. v. Continental Cas. Co.* (CD CA 1995) 883 F.Supp. 488, 492.  Second, it must be

established that the moving party is *without fault* in creating the crisis or that the crisis occurred as a result of *excusable* neglect. *Id.*

In order to maintain its operations, LiveOne secured two different financing vehicles: (1) a $7 million senior secured promissory note; and (2) a $15 million senior subordinated secured convertible note. (Katz Decl., at ¶¶ 41-43 and Exhibits I & J.) The senior secured note provides that a default on an obligation to a third party is a default on the note, subject to applicable cure period, if any. The senior secured note also provides that if a material adverse change occurs in LiveOne's financial condition, and the senior secured lender reasonably believes the prospect of payment or performance of such loan is materially impaired, an event of default would occur under the note. (Id., at Exhibit J, p. 7.) The senior subordinated secured note provides that if a judgment not covered by insurance in excess of $250,000 is entered against LiveOne and, within 60 days after entry thereof, such judgment is not discharged or satisfied or execution thereof stayed pending appeal, or within 60 days after the expiration of any such stay, such judgment is not discharged or satisfied. (Id., at Exhibit I, p. 28, Section 7(a)(xii)) Upon a default, either of the secured senior lenders can and will declare the entire outstanding amount and unpaid interest ***immediately due***. (Katz Decl., at Exhibit I, p. 28, and Exhibit J, p. 2-3.)

This Court's entry of judgment on October 13, 2022, will place or subject to the possibility of not being able to cure such default, may have already placed, LiveOne in default on the two notes, subject to applicable notice and cure periods. LiveOne must report this default to the two senior creditors. Such default will trigger the entire outstanding amount and unpaid interest of the two notes to be immediately due. The repercussions will be devastating to LiveOne, its employees and to its creditors – including the rightsholders registered with SoundExchange who will not receive their royalties.

This predicament is not the result of fault of LiveOne.  Immediately upon his appearance, attorney Jeffrey Katz has acted, in good faith, to set aside the default and to file an answer. Plaintiff's counsel had given his word and three occasions that he would cooperate with either extending the time for Defendants to answer or, alternatively, stipulating to setting aside the default.  Plaintiff had a change of heart, apparently, and within hours, its counsel filed for entry of default judgment.

**D. Plaintiff Failed to Provide the Rule 55(b)(2) Advance Notice before Seeking Entry of the Judgment.**

If the defaulting party has "appeared" in the action, notice of the application for default judgment must be served *at least 7 days* prior to the hearing on such application. [FRCP 55(b)(2); *City of New York v. Mickalis Pawn Shop, LLC* (2nd Cir. 2011) 645 F3d 114, 132]

The Rule 55(b)(2) notice allows a defaulted defendant who has appeared in the action opportunity to show "good cause" why the default should be set aside. (FRCP 55(c), *before* a default judgment is entered. [*Sea-Land Service, Inc. v. Ceramica Europa II, Inc.* (1st Cir. 1998) 160 F.3d 849, 852—purpose of Rule 55(b)(2) notice requirement "is to permit a party to show cause for its failure to timely appear"]

The "appearance" need not be a formal one or involve any submission or presentation to the court. An "appearance" may be found if defendant has *clearly manifested an intent to defend* the action (e.g., by letters or telephone calls): *Wilson v. Moore & Assocs., Inc.* (9th Cir. 1977) 564 F.2d 366, 369.  The indicia of LiveOne's intent are apparent from its executing a stipulation for additional time to answer; its motion to extend time; and its draft stipulation to set aside the default.

- 14 -

1    Plaintiff's counsel never provided seven days' notice.  Rather, the notice provided was in

2    the order of just one day.  ("Rob, we are filing the judgment tomorrow afternoon…."  (Katz Decl.,

3    at Exhibit A, p. 3.)

4

5    **E.  Good Cause Exists to Set Aside Entry of Default and Default Judgment**

6    In determining whether good cause has been shown, a district court must consider (1)

7    whether the default resulted from culpable conduct on the part of the defendant; (2) whether the

8    defendant has a meritorious defense; and (3) whether the plaintiff would be prejudiced by setting

9    aside the default. *TCI Grp. Life Ins. Plan v. Knoebber* (9th Cir. 2001) 244 F.3d 691, 696. "To be

10   prejudicial, the setting aside of a [default] must result in greater harm than simply delaying

11   resolution of the case." *Id.* at 701.

12

13   There is no credible evidence that the default resulted from culpable conduct. A

14   defendant's conduct may be deemed "culpable" only if he has "received actual or constructive

15   notice of the filing of the action and intentionally failed to answer." *United States v. Signed

16   Personal Check No. 730 of Mesle* (*"Mesle"*) (9th Cir. 2010) 615 F.3d 1085, 1092. As the Ninth

17   Circuit explained in *Mesle*, "a movant cannot be treated as culpable simply for having made a

18   conscious choice not to answer; rather, to treat a failure to answer as culpable, the movant must

19   have acted with bad faith, such as an intention to take advantage of the opposing party, interfere

20   with judicial decision-making, or otherwise manipulate the legal process." *Id*. (quotation and

21   citation omitted). Thus, a failure to answer cannot defeat a showing of good cause unless there is

22   evidence that the defendant acted deviously, deliberately, willfully or in bad faith.

23

24   The evidence demonstrates just the opposite with respect to LiveOne and its counsel.  It

25   engaged in active, good faith (on its part) negotiations while it diligently addressed the procedural

26   posture of the case.  Its outside counsel and litigation counsel attempted and succeeded in

27

28

**DEFENDANTS' *EX PARTE* APPLICATION TO EITHER (1) SET ASIDE THE DEFAULT AND VACATE DEFAULT JUDGMENT; OR, (2) SHORTEN TIME**

addressing the absence of the answer.  However, it was Plaintiff's underhanded moves – the withdrawal of the stipulation and the expeditious filing of the judgment – that was the cause of the LiveOne's predicament.

LiveOne has moved diligently to address a default judgment which is substantial.  While LiveOne would remain committed to an alternative resolution, it would like the opportunity to defend itself should SoundExchange remain obstinate in its position.

### 1.  Defense:  Statute of Limitations

Given the opportunity to defend this case, LiveOne has a number of defenses.  Among those defenses is the statute of limitations.  SoundExchange's Complaint is seeking to recover statutory licensing fees that date back to 2013 – and perhaps older.  LiveOne should have the opportunity to apply the three-year statute of limitations[1] in defense of the Complaint.

### 2.  Defense:  Economic Duress

To the extent that Plaintiff seeks the enforcement of the RPPA – which may be underlying the request for entry of judgment (see Section G) – LiveOne has lost the opportunity to enjoin the enforcement of this agreement because it was, as LiveOne will prove if given the opportunity, the product of economic duress.

LiveOne acquired Slacker on December 27, 2017.  A substantial portion of the alleged outstanding fees were incurred prior to the acquisition.  Plaintiff undertook an audit in December 2016 – one year before the acquisition.  (Complaint, at ¶ 28.)  The audit took Plaintiff nearly three years to complete.  (Id.)

---

[1] 17 USC 507(b);  *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 677-78 (2014).  SoundExchange, on its own website, concedes that that the look-back period is 3 years.  "We collect as far back as 3 years."  https://www.soundexchange.com/frequently-asked-questions/.

Important to this defense is an understanding of who the parties are.  SoundExchange is "***the sole entity*** in the United States designed by the Library of Congress to collect digital performance royalties from statutory license used and to distribute those royalties to performing artists and copyright owners." (Complaint, at ¶ 13; emphasis added.)  Its board is comprised, in part, of executives from the largest record labels in the United States.[2]  The amount of power it wields in the distribution and licensing of music is unparalleled.

LiveOne is a small digital media company whose focus, prior to the acquisition of Slacker, was the promotion and broadcast of live musical events.  With the acquisition of Slacker, LiveOne entered the digital radio streaming business.

The RPPA was negotiated and executed in 2020 – the peak of the COVID pandemic when all live musical events had been suspended.  A large portion of LiveOne core business was paralyzed and it would have to rely on Slacker to keep the business afloat.  SoundExchange was well aware of this.  Plaintiff threatened Slacker to pull its access to the enormous musical catalogue associated with the SoundExchange – on par with the injunction included in the October 13, 2022 judgment.  Had SoundExchange delivered on the threat, the repercussions on the entire company would have been devastating.  Plaintiff exploited LiveOne's weakness.  Two years later, LiveOne must now come to terms with financial impact of SoundExchange's power.

Despite the fact that the parties seemed very close in reaching a negotiated settlement on terms that LiveOne can perform, SoundExchange is willing to walk from the negotiation table and forego collecting any royalties for the rightsholders (artists and publishers).  **Mr. Wiener conceded that SoundExchange is well aware that entering a judgment raises the prospect**

---

[2] https://www.soundexchange.com/who-we-are/#leadership

**that it is unable to collect anything from LiveOne; however, it has accepted that outcome so it can make an example of LiveOne.**  (Katz Decl., at ¶ 46.)

While SoundExchange does keep a small portion of any collection to cover its costs, the bulk of funds to which LiveOne had committed during negotiations would be destined for artists and publishers.  It is a dangerous scenario to negotiate with an entity that is willing to ignore the economics.  This is traditionally the factor which drives business decisions.  However, LiveOne did not have the facility, in 2020 (or now), of negotiating with a business.  Rather, SoundExchange –a non-profit – had exercised its sole and exclusive power to force LiveOne into an ill-fated agreement to stave off financial misfortune or, at worst, bankruptcy.  "[T]here is an increasing recognition of the law's role in correcting inequitable or unequal exchange between parties of disproportionate bargaining power and a greater willingness to not enforce agreement were entered into under coercive circumstances."  *Rich & Whillock, Inc. v. Ashton Development, Inc.* (1984) 157 Cal.App.3d 1154, 1158 (where the court used the doctrine of economic duress as a ground to escape a settlement agreement which a party had negotiated after creating the economic duress of imminent bankruptcy and then used that vulnerability to negotiate the terms of the settlement agreement.)

Negotiating with an entity with a monopoly in the digital performance royalties arena results, at times, in an uneven playing field. The economic duress doctrine serves as a last resort to correct this aberration when conventional alternatives and remedies are unavailing.  LiveOne should be afforded the opportunity to further develop this defense and preclude the enforcement of the RPPA.

- 18 -

**F. Plaintiff Will Not Be Prejudiced by an Order Setting Aside the Default.**

Plaintiff would not be prejudiced by an order setting aside the default. As noted above, "the setting aside of a [default] must result in greater harm than simply delaying resolution of the case." *TCI Grp.*, 244 F.3d at 696. "Rather, the standard is whether [the] plaintiff's ability to pursue his claim will be hindered." Id. (quotation and citation omitted). The present record reflects that Plaintiff's ability to pursue his claims will not be hindered by an order setting aside the default. Indeed, the only prejudice See *Mesle*, 615 F.3d at 1091 ("[J]udgment by default is a drastic step appropriate only in extreme circumstances; a case should, whenever possible, be decided on the merits.") (quotation and citation omitted). In view of the foregoing, Defendants' motion to set aside the default should be granted.

**G. Entry of Judgment on the RPPA Is in Error.**

While Plaintiff's request for entry of judgment is not a model of clarity, LiveOne anticipates that Plaintiff may argue that the Court's entry of judgment on October 13, 2022, was not the result of LiveOne's default (for its failure to file an answer), but rather the entry of the stipulated judgment executed in 2020.

There are a number of issues that arise from this position which warrant setting aside the judgment and permitting LiveOne the opportunity to defend this case on the merits.

**1. The Entry of Judgment Violates FRCP Rule 54**

Plaintiff's Complaint, filed on June 28, 2022, contains three claims for relief. The third claim, and only the third claim, arises from the Royalty Payment Plan Agreement which is allegedly the foundation with the stipulated consent judgment. Two other claims arise from statute – violation of 17 U.S.C. § 114(f)(3)(B) [Count One] and 37 C.F.R. § 380.6 [Count Two].

F.R.C.P. Rule 54 provides: "When an action presents more than one claim for relief— whether as a claim, counterclaim, crossclaim, or third-party claim—or when multiple parties are

- 19 -

involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties _**only if the court expressly determines that there is no just reason for delay**_." The judgment entered on October 13, 2022, does not include an express determination that there is no just reason for delay.

### 2.   <u>Plaintiff's Request for Entry of Judgment Is Inadequate.</u>

Whether the judgment is arises from default or a stipulated consent judgment, Plaintiff must make an evidentiary showing to support the court's entry of judgment.  In the former case (default), Plaintiff must attest that proper service was made, the date of service, and defendants' failure to answer the complaint.

If the latter case (the judgment based upon a stipulated consent order), Plaintiff must provide the Court with the terms and conditions permitting Plaintiff's filing the stipulated judgment and the evidence to substantiate the satisfaction of those terms and conditions. Plaintiff's request for entry of judgment is premised upon the declaration of Christopher Wiener. The declaration does not include an authenticated copy of the RPPA nor any facts addressing Plaintiff's satisfaction of all terms and conditions for entry of the Consent Judgment.

To the extent that Plaintiff relies upon its allegations in the unanswered Complaint to fill in the missing information, LiveOne should be permitted to proceed with its Rule 60 motion to set aside the default and to defend the case on the merits.

### 3.   <u>The Judgment Includes Statutory Fees Assessed after the Stipulated Judgment</u>   <u>Was Executed.</u>

The stipulation filed with the Court to support the request for the Court's entry of judgment was executed on October 20, 2020.  (Docket No. 27.) The proposed judgment includes $2,583,615.86 representing, alleged, statutory fees "and/or" other royalties Defendants failed to pay following the stipulation, plus associated "and/or" unpaid late fees.

- 20 -

This seven-figure number warrants this Court's conducting a hearing, under Rule 55(b)(2), to obtain an accounting and other evidence to substantiate the figure.  Plaintiff has offered no evidence by declaration or otherwise to justify this figure.  Accordingly, the judgment should be set aside.

**IV.     Conclusion**

LiveOne respectfully implores this Court to apply law and exercise its equity powers to set aside the judgment and permit LiveOne to defend this case on the merits.  In addition, LiveOne requests that this Court refer this matter to its magistrate for a settlement conference.  The parties are too close in the process to walk away from the table.

DATED: October 18, 2022                    KESHER LAW GROUP, P.C.
                                           Jeffrey A. Katz


                                           /Jeffrey A. Katz/
                                           Attorneys for Defendants
                                           LIVEONE, INC., and SLACKER, INC.

**DEFENDANTS' *EX PARTE* APPLICATION TO EITHER (1) SET ASIDE THE DEFAULT AND VACATE DEFAULT JUDGMENT; OR, (2) SHORTEN TIME**

**PROOF OF SERVICE**

**STATE OF CALIFORNIA,**
**COUNTY OF ORANGE**

I am employed in the County of Orange, State of California. I am over 18 years of age and not a party to this action. My business address is 1919 N. Heliotrope Dr., Santa Ana, CA 92706.

On October 19, 2022, I served a copy of the document(s) listed below to be served to the address(es) and by the method of service described below as follows:

**DEFENDANTS' *EX PARTE* APPLICATION TO EITHER (1) SET ASIDE THE DEFAULT AND VACATE DEFAULT JUDGMENT; OR, (2) SHORTEN TIME TO HEAR DEFENDANTS' MOTION TO SET ASIDE DEFAULT AND VACATE DEFAULT JUDGMENT AND STAY THE CONSENT ORDER; AND TO CONVENE A STATUS AND MANDATORY SETTLEMENT CONFERENCE**

JEFFREY G. KNOWLES                     *Attorneys for Plaintiff*
Ef-jgk@cpdb.com                        SOUNDEXCHANGE, INC.
CHRISTOPHER J. WIENER
Ef-cjw@cpdb.com
COBLENTZ PATCH DUFFY & BASS, LLP
One Montgomery Street, Suite 3000
San Francisco, CA 94104-5500


**X       BY EMAIL.** I served the above documents via email transmission to each of the parties listed above to their listed email address and each of the parties have consented to accept electronic service.


I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct. Executed on October 19, 2022, in Santa Ana, California.


_/Jeffrey A. Katz/_____
Jeffrey A. Katz

**DEFENDANTS' *EX PARTE* APPLICATION TO EITHER (1) SET ASIDE THE DEFAULT AND VACATE DEFAULT JUDGMENT; OR, (2) SHORTEN TIME**