JEFFREY G. KNOWLES (State Bar No. 129754)
ef-jgk@cpdb.com
CHRISTOPHER J. WIENER (State Bar No. 280476)
ef-cjw@cpdb.com
COBLENTZ PATCH DUFFY & BASS LLP
One Montgomery Street, Suite 3000
San Francisco, California 94104-5500
Telephone: 415.391.4800
Facsimile: 415.989.1663

Attorneys for Plaintiff
SoundExchange, Inc.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SOUNDEXCHANGE, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>LIVEONE, INC., a Delaware corporation & SLACKER, INC., a Delaware corporation,<br><br>Defendants. | Case No. 2:22-cv-04410-AB-AFM<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS' EX PARTE APPLICATION TO EITHER (1) SET ASIDE THE DEFAULT AND VACATE DEFAULT JUDGMENT; OR (2) SHORTEN TIME TO HEAR DEFENDANTS' MOTION TO SET ASIDE DEFAULT AND VACATE DEFAULT JUDGMENT AND STAY THE CONSENT ORDER; AND TO CONVENE A STATUS AND MANDATORY SETTLEMENT CONFERENCE**<br><br>Judge: Hon. Andre Birotte Jr.<br>Date: None<br>Time: None<br>Place: 7B (350 West First Street, Los Angeles, CA 90012)<br><br>Trial Date: None Set |

# TABLE OF CONTENTS

Page

INTRODUCTION .................................................................................................... 4

FACTUAL BACKGROUND .................................................................................. 5

ARGUMENT ............................................................................................................ 9

    I.    THE ROYALTY PAYMENT PLAN AGREEMENT AUTHORIZED SOUNDEXCHANGE TO FILE THE STIPULATION FOR ENTRY OF CONSENT JUDGMENT UPON DEFENDANTS' DEFAULT UNDER THE RPPA. ................... 9

        A.    The Stipulation Comports With Rule 54. .................................... 10

        B.    The Stipulation and Consent Judgment Adequately Describe the Requested Relief. ...................................................... 11

        C.    SoundExchange Submitted A Sworn Declaration Supporting The Consent Judgment .............................................. 13

    II.    THE CONSENT JUDGMENT IS NOT A DEFAULT JUDGMENT. ............................................................................................ 13

        A.    SoundExchange Is Prejudiced Every Day That Defendants Use The Statutory License Without Payment. ........................... 14

        B.    Defendants' Defenses Are Meritless. ........................................... 15

CONCLUSION ...................................................................................................... 18

013917.0004 4863-0540-9082.3      2      Case No. 2:22-cv-04410-AB-AFM

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' EX PARTE APPLICATION TO EITHER (1) SET ASIDE THE DEFAULT AND VACATE DEFAULT JUDGMENT; OR (2) SHORTEN TIME**

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Aho v. Clark*,
  608 F.2d 365 (9th Cir. 1979) ............................................................................. 12

*Brandt v. Am. Bankers Ins. Co. of Fla.*,
  653 F.3d 1108 (9th Cir. 2011) ........................................................................... 14

*Franchise Holding II, LLC. v. Huntington Restaurants Grp., Inc.*,
  375 F.3d 922 (9th Cir. 2004) ............................................................................. 18

*Spectrum Lab'ys LLC v. Lahar Mfg Inc.*,
  No. SACV1301001JVSRNBX, 2014 WL 12588471 (C.D. Cal. May 23, 2014) ................................................................................................................. 12

*United States v. Estate of Stonehill*,
  660 F.3d 415 (9th Cir. 2011) ............................................................................. 12

*United States v. Signed Personal Check No. 730 of Mesle*,
  615 F.3d 1085 (9th Cir. 2010) ........................................................................... 16

**Statutes & Rules**

Fed. R. Civ. Proc.
  12 ........................................................................................................................ 17
  54 ................................................................................................................. 10, 11
  55 ........................................................................................................................ 14
  60 ......................................................................................................... 11, 12, 14

## INTRODUCTION

This is a lawsuit to recover royalties due to performing artists and rightsholders that Defendants have steadfastly refused to pay for over five years, and to stop Defendants from continuing to abuse the Copyright Act without compensating artists for their work.

SoundExchange – a non-profit collective authorized by Congress – collects royalties from online music streaming services and distributes those royalties to thousands of musicians and rightsholders every month. SoundExchange collects royalties for the use of a compulsory license for the digital performance of sound recordings. The license is "compulsory" because performing artists and rightsholders are obliged to license their works in exchange for an established royalty set by the Copyright Royalty Judges every five years. These royalties are significant: since its founding in 2003, SoundExchange has distributed over nine billion dollars to performing artists and rightsholders.

Online music streaming services like Defendants' Slacker Radio can take advantage of the compulsory licensing scheme to avoid the burden of negotiating individual licenses with rightsholders before including their recordings on the Slacker Radio service. Doing so has allowed Slacker Radio to offer a greater variety of songs to its customers thereby, presumably, making its service more desirable to music consumers.

For the last five years, Defendants have relied on the statutory license to stream sound recordings to consumers. And for the last five years, SoundExchange has pleaded with Defendants to meet their statutory obligations, while indulging Defendants' many excuses for non-payment of the royalties due for the use of that license.

In 2020, with the aid of outside counsel, Defendants negotiated a plan to repay millions of dollars owed to SoundExchange which Defendants had accrued since late 2017. During those negotiations, SoundExchange agreed not to file suit

for Defendants' unpaid royalties, and Defendants agreed to repay the outstanding balance over 24 months while keeping current with any new royalty obligations they incurred from the continued use of the statutory license. The parties memorialized their agreement in a Royalty Payment Plan Agreement.

Détente was short-lived. Seven months later, Defendants stopped making the required periodic repayments. They also stopped making their monthly royalty payments for *new* music streams on Slacker Radio, all the while continuing to operate in reliance on the statutory license.

Thankfully, SoundExchange had prepared for this eventuality. In the event Defendants defaulted on their obligations under the Royalty Payment Plan Agreement, Defendants agreed that SoundExchange could file suit and enter a Stipulation to Entry of Consent Judgment (and an associated Consent Judgment) which Defendants had agreed to, and executed, concurrent with the Royalty Payment Plan Agreement. This guarantee was critically important to SoundExchange as it provided a backstop guarantee that it could collect the significant unpaid royalties Defendants owed at the time.

The Court should deny Defendants' latest attempt to shirk their obligations with the promise that next time will be different. Five years is long enough; SoundExchange has no obligation to negotiate *ad infinitum* with Defendants, who have demonstrated at every opportunity that they will leverage the creativity of others without compensation. Judgment was both appropriate under the Royalty Payment Plan Agreement and necessary to protect performing artists.

## FACTUAL BACKGROUND

Defendants operate a digital music streaming service. Through their service (Slacker Radio), consumers can listen to music on their computers, mobile phones, and even through their car's entertainment system. Defendants do not own the copyrights to the hundreds of thousands of sound recordings streamed digitally on Slacker Radio. Instead, Defendants have relied on the Copyright Act's compulsory

license for the digital performance of sound recordings.  (Declaration of Christopher J. Wiener ("Wiener Decl."), ¶ 3.)

The artists and rightsholders – on whose creativity Defendants built their business – had no choice in the matter; the Copyright Act authorizes digital streaming services like Slacker Radio to pay a non-negotiated royalty to SoundExchange, which distributes those royalties to artists and rightsholders. (*Id.*, ¶ 4.)  This arrangement, often referred to as the statutory license or compulsory license, is an exception to the typical authority granted to a copyright owner to exclude others from digitally publicly performing and making ephemeral copies of their protected works.  Defendants choose which recordings they want to stream, while rightsholders are *compelled* to allow those streams in exchange for a royalty. (*Id.*)

Defendants benefit greatly under this system.  Their streaming service skipped the arduous process of negotiating thousands of individual licenses, allowing them to stream or publicly perform sound recordings via digital transmission without infringing the copyrights owned by rightsholders.[1]  (*Id.*, ¶ 5.)

In exchange for this remarkable license, Defendants have three main obligations:  (1) report monthly to SoundExchange how many streams were played and of which recordings; (2) submit to periodic audits to confirm the accuracy of those reports; and (3) pay the royalties corresponding with the number of streams each month.  (*Id.*, ¶ 6.)

With some exceptions, Defendants have generally made their required monthly reports and submitted to audits, but have persistently failed to make their required royalty payments.  (*Id.*)

---

[1] As discussed in more detail, *infra*, Defendants are free to negotiate – and have negotiated – separate agreements with rightsholders *in lieu* of using the statutory license.  (Wiener Decl., ¶ 5.)

In 2017, Defendants began missing their monthly payments, accruing a balance of nearly **$10 million** after late fees and underpayments discovered in audit of prior payments.[2] (*Id.*, ¶ 7.) To resolve their dispute without litigation, in 2020 SoundExchange and Defendants negotiated a Royalty Payment Plan Agreement ("RPPA") which established a schedule for Defendants to repay their outstanding debt.[3] (*Id.*, ¶ 8.) The RPPA did not change Defendants' obligation to pay for any *new* streams made in reliance on the statutory reliance (*i.e.*, streams made after the RPPA was signed). (*Id.*)

Given Defendants' history of non-payment, SoundExchange sought assurances that Defendants would abide by the terms of the RPPA and meet their ongoing royalty obligations for post-RPPA streams. Thus, Defendants and SoundExchange agreed that in the event Defendants defaulted on their obligations under the RPPA, SoundExchange could file suit and enter a stipulated consent judgment for the balance of the RPPA, late fees, and any post-RPPA unpaid royalties. (*Id.*, ¶ 9.) Both Defendants' and SoundExchange's principals executed the stipulation and consent judgment as part of the settlement. (*Id.*, ¶ 11.)

As it turned out, SoundExchange was right to be worried. About seven months later, Defendants stopped paying both their RPPA payments (for past due royalties) *and* their ongoing royalty obligations (for post-RPPA streams). (*Id.*, ¶ 12.) SoundExchange tried to resolve Defendants' non-payment for months until Defendants inexplicably went silent. On March 14, 2022, SoundExchange notified Defendants that they were in default of the RPPA and that, pursuant to its terms, all amounts owed under the RPPA were immediately due and payable. (*Id.*) Tasked

---

[2] Defendants focus on the "24 hours" and "nine days" following the filing of the Complaint in July 2022 (Mot. at 4), but the dispute begins much earlier.

[3] The RPPA contains commercially sensitive terms that could disadvantage SoundExchange if made public. If the Court desires, SoundExchange is amenable to submitting the RPPA under seal.

with protecting rightsholders, SoundExchange filed this lawsuit on June 28, 2022. (ECF No. 1.)

Defendants have treated this litigation with the same disregard as they did their obligations under the RPPA and Copyright Act. SoundExchange stipulated to extend the time for Defendants to answer or respond until August 18, 2022. (ECF No. 19.) Despite that extension, Defendants failed to file a responsive pleading. On August 23, 2022, the Court ordered SoundExchange to either take Defendants' default or show cause for why the suit should not be dismissed. (ECF No. 20.) SoundExchange's counsel promptly informed Defendants of the Court's order. (*See* Wiener Decl., ¶ 13 & Ex. B.)

On August 26, 2022, SoundExchange informed Defendants of the Court's Order to Show Cause and warned that SoundExchange would seek a default if they did not file an answer by September 5, 2022. (ECF No. 30-1, Ex. A at p. 15.) Defendants did not respond to that August 26 email. (*Id.*, ¶ 14.)

Nearly three weeks after their extended deadline to respond to the Complaint, Defendants still had not answered. On September 6, 2022, SoundExchange therefore requested that the Clerk enter a default against each Defendant. (ECF No. 21.) The clerk defaulted Defendants on September 8, 2022. (ECF No. 22.) Despite being served with the Complaint on **July 7, 2022** (ECF Nos. 17 & 18), Defendants admit they did not secure litigation counsel until **September 6, 2022** when Defendants' outside counsel Sasha Ablovatskiy emailed their current litigation counsel Jeffrey Katz. (Mot. at 7.)

Mr. Katz first appeared in this litigation on September 8, 2022. (ECF No. 24 [Motion for Extension of Time]), but admits he only "reviewed the Court's docket" to "learn[] for the first time that SoundExchange had requested entry of default" the next day, September 9, 2022. (ECF No. 30-1 at ¶¶ 16 & 18.)[4]

---

[4] Defendants' contention that the judgment poses an existential threat to their

SoundExchange was initially amenable to granting Defendants a further time to respond, or relieve them of their default. (Wiener Decl., ¶ 15.) But facing stalled settlement negotiations and an apparent unwillingness to abide by their contractual, statutory, or judicial obligations, that willingness had limits.[5] (*Id.*, ¶; s*ee* Mot. at 7.) SoundExchange determined that it should evaluate Defendants' settlement position before agreeing to any further extensions. (Wiener Decl., ¶ 16.)

On October 3, 2022, SoundExchange sent its "last, best, and final" offer to Defendants to resolve this lawsuit. (Wiener Decl., ¶ 17.) Defendants did not accept that offer.[6] (*Id.*) Thus, eight days later, SoundExchange entered its Stipulation for Entry of Consent Judgment on October 12, 2022. (ECF No. 27.)

Critically, the Consent Judgment was based on Defendants default **under the Royalty Payment Plan Agreement**, not the **Clerk's Default** entered because of Defendants' failure to answer. (Wiener Decl., ¶ 18.) The Court entered judgment on October 13, 2022. (*Id.*; ECF No. 28.)

## ARGUMENT

**I. THE ROYALTY PAYMENT PLAN AGREEMENT AUTHORIZED SOUNDEXCHANGE TO FILE THE STIPULATION FOR ENTRY OF CONSENT JUDGMENT UPON DEFENDANTS' DEFAULT UNDER THE RPPA.**

The Court's October 13, 2022 Judgment is predicated on a stipulation entered

---

business (Mot. at 13) is difficult to square with their lackadaisical approach to finding counsel and subsequent (non-)adherence to the Court's deadlines.

[5] Since SoundExchange filed this lawsuit in July 2022, Defendants have not made a single payment under the RPPA, *and* have not made a single payment for ongoing statutory royalties, despite their continued use of the statutory license to stream digital sound recordings to their customers. (Wiener Decl., ¶ 16.)

[6] SoundExchange believes it is not useful to discuss the parties' relative positions during settlement negotiations, as they are both confidential and not germane to the issues presented by Defendants' motion.

by the parties in connection with the RPPA. This should not be a surprise to Defendants, as the Consent Judgment was carefully negotiated. For example, on October 27, 2020, during the parties' negotiations for the RPPA, Defendants' then-Senior Executive Vice President Mike Bebel conveyed "markups" for the various documents so the parties could finalize the deal. (*See* Wiener Decl., ¶ 10 & Ex. A.) Among other attachments, Mr. Bebel sent redlined copies of both the Stipulation and the Consent Judgment containing edits by Defendants' outside counsel Sasha Ablovatskiy.[7] (*Id.*) Defendants and Mr. Ablovatskiy adjusted language throughout both documents and never once objected that the stipulation and proposed consent judgment were confusing, inappropriate, or contained improper terms. (*Id.*)

Defendants also "agree[d] and acknowledge[d] that they h[ad] been advised to consult with independent legal counsel of their own choosing for advice and consultation on this matter and have done so or declined to do so and [] entered into t[he] Stipulation to Entry of Consent Judgment knowingly and voluntarily." (ECF No. 27 at 3.) Defendants understood that their obligations under the RPPA were backed by that stipulated Consent Judgment in the event of a default on the payment terms outlined in the agreement.

Now, Defendants contend without explanation that the Stipulation is "not a model of clarity," and that in any event, the Stipulation is "in error" because it violates Rule 54, is "inadequate," and because it includes post-RPPA statutory fees. None of these arguments has merit.

### A. The Stipulation Comports With Rule 54.

Defendants first contend that the Consent Judgment to which they stipulated is improper because it does not dispose of all causes of action in the Complaint, which states claims for both breach of the RPPA, and for copyright infringement

---

[7] Mr. Ablovatskiy remains Defendants' outside corporate counsel and has participated actively in the parties' recent settlement discussions.

based on Defendants' failure to pay post-RPPA royalties, and therefore does not comport with Rule 54 of the Federal Rules of Civil Procedure.

Defendants apparently agree that the Consent Judgment disposes of the RPPA cause of action – *i.e.*, it awards SoundExchange the unpaid RPPA balance plus late fees. Contrary to Defendants' assertion, however, the Consent Judgment also disposes of the Complaint's copyright claims through its award of post-RPPA statutory royalties, relief Defendants concede only a few lines later. (Mot. at 20:22-23 (the Consent Judgment "[i]includes [s]tatutory [f]ees [a]ssessed after the [s]tipulated [j]udgment [w]as [e]xecuted.").) The parties' Consent Judgment thus includes two separate monetary awards: (1) the unpaid RPPA balance, *and* (2) the post-RPPA statutory license fees due under the Copyright Act and related regulations.

In any event, were the Court to find that the Consent Judgment did not dispose of all SoundExchange's causes of action, SoundExchange is amenable to discussing a procedural mechanism to resolve the Court's concerns.

## B. The Stipulation and Consent Judgment Adequately Describe the Requested Relief.

Defendants next argue that entry of a stipulated consent judgment requires "an evidentiary showing to support the court's entry of judgment," including the "terms and conditions permitting Plaintiff's filing the stipulated judgment" and "evidence to substantiate . . . those terms and conditions." (Mot. at 20.) Defendants offer no authority establishing that a *stipulated and agreed consent judgment* requires additional evidence before the Court may enter it. Further, even if such a rule existed, the Stipulation establishes the factual history of the parties' dispute, the accompanying Declaration of Christopher J. Wiener establishes the amounts owed, and the Consent Judgment itself describes the mathematical calculation for arriving at a final judgment.

Defendants' inchoate complaints that the judgment is "inadequate" fall far

short of the required standard.  "Relief from a judgment, under Rule 60(b)(6), F.R.Civ.P., should be granted only in cases of extraordinary circumstances."  *Aho v. Clark*, 608 F.2d 365, 368 (9th Cir. 1979).   "[S]etting aside [a] Consent Judgment requires a showing of fraud on the Court by clear and convincing evidence."  *Spectrum Lab'ys LLC v. Lahar Mfg Inc.*, No. SACV1301001JVSRNBX, 2014 WL 12588471, at *1 (C.D. Cal. May 23, 2014) (finding no fraud on the court); *see United States v. Estate of Stonehill*, 660 F.3d 415, 443-44 (9th Cir. 2011) ("We exercise the power to vacate judgments for fraud on the court with restraint and discretion . . ., and only when the fraud is established by clear and convincing evidence . . . .") (internal quotation marks and citations omitted).

In *Aho*, defendants moved to set aside a consent judgment on the theory that plaintiffs had "acted in bad faith by concealing their intention to seek attorneys' fees," and that the defendants "would not have entered into the consent agreement if they had known that [plaintiffs] would seek attorneys' fees."  *Aho*, 608 F.2d at 368. The Ninth Circuit contrasted the lower standard for overturning default judgments with that governing a consent judgment.  "The cases cited by [defendants] for the proposition that Rule 60(b) should be liberally applied involved default judgments, **which are more readily overturned than other judgments**."  *Id.* (emphasis added).  Accordingly, no "extraordinary circumstances" justified setting aside the consent agreement.  *Id.*

Here, Defendants have failed to offer any evidence – let alone clear and convincing evidence – demonstrating that the Consent Judgment should be overturned or that SoundExchange has committed fraud on the Court.  While Defendants spend significant time discussing the history of the parties' settlement negotiations, Defendants never argue that SoundExchange misrepresented any facts leading to the entry of the Stipulation and Consent Judgment.  They do not dispute they are in default under the RPPA.  They do not dispute they have failed to make post-RPPA statutory royalty payments.  And they do not dispute that Defendants

knew at the time they entered into the RPPA that failure to pay would result in entry of the Consent Judgment. Defendants' bare allegations of "inadequa[cy]" cannot overcome the strong presumption in favor of settled judgments.

### C. SoundExchange Submitted A Sworn Declaration Supporting The Consent Judgment.

Finally, Defendants argue that the Court should conduct a hearing to determine the amount of post-RPPA royalties and late fees owed. No such procedure is required by the terms of the parties agreement, and SoundExchange supported the Stipulation and Consent Judgment with an attorney declaration establishing the amount of the judgment, in accordance with the agreed stipulation. Nevertheless, SoundExchange is willing to submit further declarations in support of its Consent Judgment should the Court desire.

## II. THE CONSENT JUDGMENT IS NOT A DEFAULT JUDGMENT.

There is no dispute that the Consent Judgment is what it purports to be – a consent judgment. As Defendants already stipulated to its entry, no further analysis is necessary to confirm the judgment's validity. Nevertheless, Defendants spend most of their briefing on a red herring: SoundExchange has not demonstrated an entitlement to default judgment and that, in any event, Defendants should be relieved from their default. They cannot avoid the simple truth, however, that while Defendants did default in this litigation, the Court's October 13, 2022 Judgment is predicated on a stipulated Consent Judgment, *not* Defendants' default.

Defendants rely on the coincidental double "default" in this case. While Defendants "defaulted" on their payment obligations under the RPPA (giving rise to this lawsuit and the Consent Judgment) and "defaulted" on their judicial obligations in this lawsuit, the standards applicable to the latter are irrelevant to the former.

Indeed, SoundExchange was entitled to file the Consent Judgment whether or not Defendants answered; their default in the litigation is irrelevant and Defendants' authority regarding relief from a default judgment is inapposite for that reason. For

1  example, Defendants are correct that SoundExchange did not serve a request for
2  entry of a default judgment seven days before filing.  *See* Fed. R. Civ. Proc. 55(b);
3  Mot. at 12.  But it had no obligation to do so as the Judgment was not based on
4  Defendants' default in this lawsuit and Defendants had already agreed to entry of
5  the Consent Judgment in October 2020 when executing the RPPA.

6  Even if the default judgment standard applied – and it does not – Defendants
7  cannot establish good cause for relief from default.[8]  Setting aside a default
8  judgment requires a showing of "good cause."  Rule 55(c) of the Federal Rules of
9  Civil Procedure governs a motion to set aside entry of a default, while Rule 60(b) of
10 the Federal Rules of Civil Procedure governs motions to set aside a default
11 judgment.  "Where a defendant seeks relief under Rule 60(b)(1) based upon
12 'excusable neglect,' the court applies the same three factors governing the inquiry
13 into "good cause" under Rule 55(c). Those factors, which courts consistently refer to
14 as the '*Falk* factors,' are: (1) whether the plaintiff will be prejudiced, (2) whether the
15 defendant has a meritorious defense, and (3) whether culpable conduct of the
16 defendant led to the default."  *Brandt v. Am. Bankers Ins. Co. of Fla.*, 653 F.3d
17 1108, 1111 (9th Cir. 2011) (citations omitted).

### A. SoundExchange Is Prejudiced Every Day That Defendants Use The Statutory License Without Payment.

Defendants contend without explanation that SoundExchange will not be prejudiced. (Mot. at 19.)  Not so.  SoundExchange, and the artists and rightsholders to whom it is responsible, is prejudiced every day that Defendants fail to meet their RPPA and statutory obligations.  In the current uncertain economic environment and in a market only just recovering from the effects of the COVID-19 pandemic, artists

---

[8] By responding to Defendants, SoundExchange does not mean to suggest the Consent Judgment should be reviewed by the standards applicable to a default judgment.

are still waiting to be paid royalties dating back to 2017.

Further, absent the permanent injunction granted via the Consent Judgment Defendants continue to stream recordings to consumers without paying royalties on those streams, and therefore without paying royalties to artists and rightsholders. In so doing, every hour Defendants divert consumers who might otherwise use a different, royalty-paying digital music streaming service, thereby depriving rightsholders of royalties to which they are entitled under the Copyright Act.[9]

### B. Defendants' Defenses Are Meritless.

Defendants' next argue that they have many strong defenses to SoundExchange's complaint, none of which bear scrutiny.

*First*, Defendants contend that the statute of limitations bars SoundExchange's claims. The Complaint seeks damages for Defendants' breach of the Royalty Payment Plan Agreement and for its failure to pay post-RPPA royalties. As explained in the Complaint, Defendants breached the RPPA beginning in September 2021, well within the four-year statute of limitations for breaches of contract. Further, Defendants' failure to pay post-RPPA royalties dates to October 2020, also within the three-year statute of limitations under the Copyright Act. (ECF No. 1 (Complaint) at ¶¶ 35-37.) SoundExchange's complaint is timely.

*Second*, Defendants contend that the RPPA is the "product of economic duress" and therefore unenforceable. (Mot. at 16.) In their telling, SoundExchange wields "monopoly" power to collect royalties for the digital performance of sound recordings, which "force[d]" Defendants to negotiate with SoundExchange. (*Id.* at 18.) While novel, Defendants' "duress" argument is meritless.

Via the statutory license, Defendants possess the absolute discretion to stream or publicly perform sound recordings via digital transmission without seeking prior

---

[9] If Defendants' dire financial situation is to be believed, artists may never see those royalties.

permission of rightsholders. In exchange, Defendants are obligated to pay statutory royalties for every use of the compulsory license.[10]

No one forces Defendants to stream or publicly perform any particular sound recording, and no one forces Defendants to make use of the statutory license. To the contrary, Defendants are free to negotiate separate licenses with any rightsholder to govern the terms by which Defendants may stream their digital sound recordings, just as any copyright holder can license the use of her work on whatever terms she finds acceptable. (Wiener Decl., ¶ 5.)

Defendants have done just that with several major record labels. When Defendants' customers stream one of those labels' recordings, the terms and payment structure are governed by Defendants' separate license agreement. (Wiener Decl., ¶ 5.) Far from being a monopoly, SoundExchange and the statutory license it administers provide Defendants with remarkable latitude to license content.[11]

*Third*, Defendants – not SoundExchange – are fully culpable for their default. As Defendants note in the Motion, a "defendant's conduct may be deemed 'culpable' only if he has 'received actual or constructive notice of the action and

---

[10] SoundExchange does not license sound recordings. Rather, SoundExchange is the collective to whom services like Defendants must pay royalties in order to stream recordings pursuant to the statutory license. (Wiener Decl., ¶ 4.)

[11] Defendants also contend that SoundExchange is somehow "mak[ing] an example" of them. (Mot. at 17-18.) But that is not what SoundExchange warned Defendants. Rather, when asked why SoundExchange would proceed in the face of a potential bankruptcy, SoundExchange noted the non-monetary value of demonstrating to market participants that SoundExchange would enforce the requirements for use of the statutory license. Notwithstanding Defendants' belief they are *entitled* to a settlement for their breach of the RPPA and ongoing copyright infringement, SoundExchange had no obligation to reach an agreement, and certainly was not obliged to continuing negotiating after Defendants rejected its "last, best, and final" offer. (Wiener Decl., ¶ 19.)

intentionally failed to answer." (Mot. at 15 (quoting *United States v. Signed Personal Check No. 730 of Mesle*, 615 F.3d 1085, 1092 (9th Cir. 2010)).) Defendants contend that "[t]his predicament" – *i.e.*, Defendants' failure to answer and subsequent default in this lawsuit – "is not the result of fault of LiveOne" because Defendants' litigation counsel took steps to "set aside the default and to file an answer." (Mot. at 14.) But those are little more than closing the barn doors after the horses have fled.

In contrast, Defendants concede that they:

- were properly served with a Summons warning that they must "serve on the plaintiff an answer to the attached complaint or a motion under Rule 12" and that if they "fail to respond, judgment by default will be entered against" them. (ECF Nos. 11, 12, 17, & 18);

- knew, in fact, that the lawsuit had been filed (Mot. at 6 (Defendants' outside counsel "saw [on June 29] that [SoundExchange] filed a complaint yesterday against LiveOne and Slacker for outstanding royalty payments") in an email copying Defendants' CEO and CFO);

- knew they had an obligation to file an answer, as they requested to extend the time to respond until August 18, 2022 (Mot at. 6:21);

- knew they had missed that deadline when they asked for a further extension on August 23, 2022. (Mot. at 6:22-24);

- knew that SoundExchange would seek a default if they did not answer by September 6, 2022. (Mot. at 6:25-7: 4); and

- never filed an answer or motion under Rule 12 of the Federal Rules of Civil Procedure.

These actions can only reflect a conscious decision not to engage in this lawsuit while the parties negotiated a potential settlement of the case, possibly to avoid the expense of hiring litigation counsel.[12]

---

[12] Defendants admit they did not hire litigation counsel until September 6, 2022, approximately two months after being served with the Complaint. (Mot. at 7.)

Defendants contend that their ongoing negotiations with SoundExchange relieve them of any potential culpability. But separate negotiations or "side-agreement[s]" are insufficient to overcome a default. "If a defendant has received actual or constructive notice of the filing of the action and failed to answer, its conduct is culpable." *Franchise Holding II, LLC. v. Huntington Restaurants Grp., Inc.*, 375 F.3d 922, 926 (9th Cir. 2004).

## CONCLUSION

SoundExchange respectfully requests that the Court deny Defendants' motion to set aside the judgment, and confirm that the Consent Judgment was properly entered as a result of Defendants' default under the Royalty Payment Plan Agreement.

DATED: October 25, 2022            COBLENTZ PATCH DUFFY & BASS LLP

By:    */s/ Christopher J. Wiener*
CHRISTOPHER J. WIENER
Attorneys for Plaintiff
SoundExchange, Inc.