JEFFREY G. KNOWLES (SBN 129754)
ef-jgk@cpdb.com
CHRISTOPHER J. WIENER (SBN 280476)
ef-cjw@cpdb.com
COBLENTZ PATCH DUFFY & BASS LLP
One Montgomery Street, Suite 3000
San Francisco, California 94104-5500
Telephone: 415.391.4800
Facsimile: 415.989.1663

Attorneys for Plaintiff
SOUNDEXCHANGE, INC.

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SOUNDEXCHANGE, INC., a Delaware corporation. <br><br> Plaintiff, <br><br> v. <br><br> LIVEONE, INC., a Delaware corporation & SLACKER, INC., a Delaware corporation. <br><br> Defendants. | Case No. 2:22-cv-04410-AB-AFM <br><br> **DECLARATION OF CHRISTOPHER J. WIENER IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANTS' EX PARTE APPLICATION** |

I, Christopher J. Wiener, declare as follows:

1. I am an attorney duly admitted to practice before this Court. I am a partner of Coblentz Patch Duffy & Bass LLP, attorneys of record for Plaintiff SoundExchange, Inc. ("Plaintiff" or "SoundExchange"). I have personal knowledge of the facts set forth herein, except as to those stated on information and belief and, as to those, I am informed and believe them to be true. If called as a witness, I could

1. and would competently testify to the matters stated herein.

2. I submit this declaration in support of SoundExchange's opposition to Defendants' *ex parte* application to either (1) set aside the default and vacate default judgment; or (2) shorten time to hear Defendants' motion to set aside default and vacate default judgment and stay the consent order; and to convene a status and mandatory settlement conference.

3. Defendants operate a digital music streaming service. Through their service (Slacker Radio), consumers can listen to music on their computers, mobile phones, and even through their car's entertainment system. Defendants do not own the copyrights to the hundreds of thousands of sound recordings streamed digitally on Slacker Radio. Instead, Defendants have relied on the Copyright Act's compulsory license for the digital performance of sound recordings.

4. The Copyright Act authorizes digital streaming services like Slacker Radio to pay a non-negotiated royalty to SoundExchange, which distributes those royalties to artists and rightsholders. SoundExchange does not license sound recordings. Rather, SoundExchange is the collective to whom services like Defendants must pay royalties in order to stream recordings pursuant to the statutory license. This arrangement, often referred to as the statutory license or compulsory license, is an exception to the typical authority granted to a copyright owner to exclude others from digitally publicly performing and making ephemeral copies of their protected works. Defendants choose which recordings they want to stream, while rightsholders are compelled to allow those streams in exchange for a royalty.

5. By using the statutory license, Defendants are able to skip the arduous process of negotiating thousands of individual licenses, allowing them to stream or publicly perform sound recordings via digital transmission without infringing the copyrights owned by rightsholders. Defendants are free to negotiate agreements with rightsholders *in lieu* of using the statutory license. Those separate licenses govern the terms by which Defendants may stream their digital sound recordings,

just as any copyright holder can license the use of her work on whatever terms she finds acceptable. Defendants have done just that with several major record labels. When Defendants' customers stream one of those labels' recordings, the terms and payment structure are governed by Defendants' separate license agreement.

6. Defendants have three main obligations when using the statutory license: (1) report monthly to SoundExchange how many streams were played and of which recordings; (2) submit to periodic audits to confirm the accuracy of those reports; and (3) pay the royalties corresponding with the number of streams each month. With some exceptions, Defendants have generally made their required monthly reports and submitted to audits, but have persistently failed to make their required royalty payments.

7. In 2017, Defendants began missing their monthly payments, accruing a balance of nearly $10 million after late fees and underpayments discovered in audit of prior payments.

8. To resolve their dispute without litigation, in 2020 SoundExchange and Defendants negotiated a Royalty Payment Plan Agreement ("RPPA") which established a schedule for Defendants to repay their outstanding debt. The RPPA did not change Defendants' obligation to pay for any *new* streams made in reliance on the statutory reliance (*i.e.*, streams made after the RPPA was signed). (*Id.*)

9. SoundExchange sought assurances that Defendants would abide by the terms of the RPPA and meet their ongoing royalty obligations for post-RPPA streams. Thus, Defendants and SoundExchange agreed that in the event Defendants defaulted on their obligations under the RPPA, SoundExchange could file suit and enter a stipulated consent judgment for the balance of the RPPA, late fees, and any post-RPPA unpaid royalties.

10. On October 27, 2020, during the parties' negotiations for the RPPA, Defendants' then-Senior Executive Vice President Mike Bebel conveyed "markups" for the various documents so the parties could finalize the deal. Among other

attachments, Mr. Bebel sent redlined copies of both the Stipulation and the Consent Judgment containing edits by Defendants' outside counsel Sasha Ablovatskiy. Defendants and Mr. Ablovatskiy adjusted language throughout both documents and never once objected that the stipulation and proposed consent judgment were confusing, inappropriate, or contained improper terms. A true and correct copy of Mr. Bebel's email, and the attachments containing the redlined copies of the Proposed Consent Judgment and Stipulation to Entry of Consent Judgment (reflecting edits by Mr. Ablovatskiy) are attached hereto as **Exhibit A**. A limited redaction has been made to avoid revealing confidential settlement communications not germane to this motion.

11. As shown on the face of the Stipulation, both Defendants' and SoundExchange's principals executed the stipulation and consent judgment as part of the settlement.

12. About seven months later, Defendants stopped paying both their RPPA payments (for past due royalties) and their ongoing royalty obligations (for post-RPPA streams). SoundExchange tried to resolve Defendants' non-payment for months until Defendants inexplicably went silent. On March 14, 2022, SoundExchange notified Defendants that they were in default of the RPPA and that, pursuant to its terms, all amounts owed under the RPPA were immediately due and payable.

13. SoundExchange stipulated to extend the time for Defendants to answer or respond until August 18, 2022. Despite that extension, Defendants failed to file a responsive pleading. On August 23, 2022, the Court ordered SoundExchange to either take Defendants' default or show cause for why the suit should not be dismissed. SoundExchange's counsel promptly informed Defendants of the Court's order. Attached hereto as **Exhibit B** is a true and correct copy of my August 26, 2022 email to Sasha Ablovatskiy (Defendants' outside counsel), copying Defendants' Chief Executive Officer Rob Ellin and Chief Financial Officer Aaron

Sullivan.  A limited redaction has been made to avoid revealing confidential settlement communications not germane to this motion.

14.   That August 26, 2022 email informed Defendants of the Court's Order to Show Cause and warned that SoundExchange would seek a default if they did not file an answer by September 5, 2022.  Defendants did not respond to that August 26 email.

15.   SoundExchange was initially amenable to granting Defendants a further time to respond, or relieve them of their default.  But facing stalled settlement negotiations and an apparent unwillingness to abide by their contractual, statutory, or judicial obligations, that willingness had limits.

16.   Since SoundExchange filed this lawsuit in July 2022, Defendants have not made a single payment under the RPPA, *and* have not made a single payment for ongoing statutory royalties, despite their continued use of the statutory license to stream digital sound recordings to their customers.  Accordingly, SoundExchange determined that it should evaluate Defendants' settlement position before agreeing to any further extensions.

17.   On October 3, 2022, SoundExchange sent its "last, best, and final" offer to Defendants to resolve this lawsuit.  Defendants did not accept that offer.  Thus, eight days later, SoundExchange entered its Stipulation for Entry of Consent Judgment on October 12, 2022.

18.   The Consent Judgment was based on Defendants default under the Royalty Payment Plan Agreement, not the Clerk's Default entered because of Defendants' failure to answer.  The Court entered judgment on October 13, 2022.

19.   Defendants contend that SoundExchange is somehow "mak[ing] an example" of them.  (Mot. at 17-18.)  But that is not what SoundExchange warned Defendants.  Rather, when asked why SoundExchange would proceed in the face of a potential bankruptcy, I noted the non-monetary value of demonstrating to market

participants that SoundExchange would enforce the requirements for use of the statutory license.

20. Upon information and belief, Slacker, Inc. is not an infant, in the United States military, or an incompetent person.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 25th day of October, 2022, in San Francisco, California.

                                           */s/ Christopher J. Wiener*
                                           Christopher J. Wiener